# CASES

## ARGUED AND DETERMINED

### IN THE

# Supreme Court of South Dakota

HOWE, Respondent, v. THOMPSON, Appellant.

(150 N. W. 301.)

(File No. 3619.    Opinion filed December 31, 1914.)

1. **Libel and Slander—Pleading—Malicious Publication—Allegation of Unprivileged Publication, Necessity of.**

   An allegation that an article concerning the conduct of his office by a county auditor, who was seeking re-election, was published maliciously, is sufficient, as regards the unprivileged character thereof, without an allegation that it was unprivileged, since, if published maliciously, it was unprivileged.

2. **Same—Complaint—Innuendo, Office of—When Applicable.**

   The office of an innuendo is not to enlarge the meaning of words published; and if the words used are neither actionable in themselves, nor when explained by extrinsic facts alleged, the innuendo cannot attribute to the words a meaning they will not bear, and thus make them actionable. Only when the words are equivocal or ambiguous, and admit of several meanings, is it proper, by innuendo, to attribute to them such fixed and definite meaning as the pleader thinks they ought to bear.

3. **Same—Negligence in Office—Construction of Language Used.**

   An article published concerning a county auditor, stating that if he and his force had worked diligently the county would have been saved a substantial specified sum of money, that it should be possible to secure employees who would be willing to work eight hours a day without idling away part of their time, thus falling behind with their work, that better results might have been attained had the auditor remained at home the preceding fall instead of spending several weeks visiting fairs, thus delaying work in his office, and that, after being allowed an extra month in which to prepare tax books, it

1—Vol. 35, S. D.

seemed unjust and unfair that those drawing salaries of $75 to $85 a month should be paid $2 an evening for a few hours' work and then not get all the books ready within the time set by law, **held**, to be susceptible of a construction charging the auditor with negligence in performance of his official duties, but contained no other libelous charge.

4. **Same—Language Susceptible of Different Constructions—Question for Jury.**

Where an alleged libelous article is susceptible of an innocent construction, it is the province of the jury to construe it.

5. **Same—Malfeasance—Corruption in Office—Construction of Language Used—Knowledge of Law.**

An article published concerning a county auditor, who had formerly been deputy auditor, stating that he had been trying to give book depositaries the impression that he had nothing to do with lowering the price of text-books, that in this he was correct, because, when it came to printing the price lists for books, he insisted on using the list price, which was 33 1-3 per cent. above cost, instead of the price provided by law, which is 10 per cent. above cost, and that such auditor was then deputy and acting auditor, **held**, not to charge, as claimed, malfeasance and corruption in office, since it did not charge that the auditor knew that the law provides that books should be sold at 10 per cent. above cost.

6. **Same—Pleading—Embezzlement—Innuendo, Imputing Unwarranted Meaning—Construction of Language.**

An article published concerning a county auditor, suggesting that school and township officers, who had found that the money levied for their organizations did not agree with the amount received, should go to the auditor's office and find out why there was a difference, and that no one should be satisfied with an evasive answer, but that they should find out what the law was regarding the system employed, and then get at the exact facts as to where the trouble originated, **held**, not to charge embezzlement, but to charge either official incompetency, or malfeasance in office; and an innuendo in a complaint, charging that respondent intended by such language to charge embezzlement, is not warranted.

7. **Libel and Slander—Charging Official Neglect, Incompetency, Malfeasance, Whether Libelous Per Se—"Libel"—Statute.**

An article which, in effect, maliciously and with knowledge of its falsity, charges a public official, seeking re-election, with neglect of official duties, incompetency in office, and malfeasance in office is libelous per se, under Civ. Code, Sec. 29, defining libel as a false and unprivileged publication "which exposes

·any person to· hatred, ·contempt, ridicule, or ·obloquy, ·or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation;" and, while the extent of neglect, degree of incompetency, or gravity of malfeasance charged might affect the amount of damage suffered, it did not affect the nature of the charge.

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Harry H. Howe against T. T. Thompson, to recover damages for alleged libel. From an order overruling a demurrer to the complaint, defendant appeals. Affirmed.

*Christopherson & Melquist,* and *Morris & Caldwell,* for Appellant.

*George W. Egan,* for Respondent. ·

(1) Under point one of the opinion, Appellant cited. Sec. 29, Civ. Code.

(2) Under point two of the opinion, Appellant cited: Nichols vs. Daily Reporter Co., 30 Utah, 74, 83 Pac. 573, 116 Am. St. Rep. 796; 18 Am. & Eng. Ency. of Law .182; Pittsburgh Ry. Co. v. McCurdy, 114 Pa. St. 554, 60 Am. Rep. 363; Bearce v. Bass, 88 Me. 521, 51 Am. State Rep. 446; Starkie on Slander and Libel, Folkard Ed., Sec. 446; Newell on ,Defamation, Slander and Libel, Sec. 39, p. 629; Odgers on ·Slander and Libel, 100; Shaffer ·v. Kintzer, 1 Binney 537, 2 Am. Dec.      ; Quinn v. Prudential Insurance ·Co. of America, 116 Iowa, 564, 90 N. W. 349; Robertson v. Adelstien, 104 Wis. 440, 80 N. W. 724; Goodrich v. Hooper, 97 Mass. 1, 93 Am. Dec. 49; Casselman v. Winship, 3 Dak. 292.

(5) Under point five of the opinion, Respondent ·cited: Martin vs. Paine, (Minn.) 72 N. W. 450; Prosser v. Callis, (Ind.) 19 N. E. 735; Tanner v. Embree, (Cal.) 99 Pac. 547; Advertiser Co. vs. Jones, (Ala) 53 So. 759; McCormick v. Hawkins, (Mich.) 135 N. W. .1066; Palmerlee v. Nottage, (Minn.) 138 N. W. 312; Mertens v. Bee Pub. Co., (Neb.) 99 N. W. 847.

(6) Under point six of the opinion, Appellant cited: 25 Cyc. 290-1; Pen. Code, Secs. 621, 622; Hawn v. Smith, 4 B. Mon. (Ky.) 385.

Respondent cited: Palmerlee v. Nottage, 138 N. W. 312.

(7) Under point seven of the opinion, Appellant cited:

·Casselman v. Winship, 3 Dak. 292; Jeage v. Beederick, 70 N. J. Law 372, 57 Atl. 157; Pittsburg et al. Railway Co. v. McCurdy, supra; Johnson v. Brown, 13 W. Va. 71; Edwards v. Chandlier, 14 Mich. 471, 90 Am. Dec. 249; Gather v. Advertiser, 102 Ala. 458, 14 So. 788; Sweeney v. Baker, 15 W. Va. 158, 31 Am. Rep. 757; Hanson v. Bristow, 87 Kans. 72, 123 Pac. 725.

Respondent submitted that: Words not actionable in themselves, may become so by being published of a person in respect to his office: (1) Where the act charged would be punished by indictment which would not be so if done by a person not in office; (2) where a libel or slander tends to disgrace and disparage one in an office of profit or honor, and deprive him of it, it not being necessary that the words should import a charge of crime. And cited: Cyc., Vol. 25, p. 346. To the general point: 25 Cyc. 349; Martin v. Paine, (Minn.) 72 N. W. 450; Prosser v. Callis, (Ind.) 19 N. E. 735; Knox v. Meeham, 66 N. W. 1149; Williams v. Davenport, 44 N. W. 311; Tanner v. Embree, 99 Pac. 547; Schomberg v. Walker, 132 Cal. 224, 64 Pac. 290; Advertiser Co. v. Jones, (Ala.) 53 So. 759; Church v. New York Tribune Assn., 118 N. Y. S. 626; McCormick v. Hawkins, 135 N. W. 1066; Palmerlee v. Nottage et al., (Minn.) 138 N. W. 312; Scougale v. Sweet, (Mich.) 82 N. W. 1061.

WHITING, J. This cause is before us upon appeal from an order overruling a demurrer to respondent complaint, interposed upon the ground that said complaint did not state facts sufficient to constitute a cause of action. While respondent was the county auditor of Minnehaha county, and subsequent to a time when he was the deputy county auditor of such county, and while he and appellant were seeking the nomination of the same party as its candidate for the said office of county auditor for the next succeeding term—such nomination to be made at an approaching primary election—appellant caused to be published broadcast through said county a certain article of and concerning respondent. The real question before us upon this appeal, as will hereinafter appear, is whether such article contained matter which was libelous per se. While the article published was quite lengthy, respondent, in his brief, concedes that the following excerpts therefrom "are practically all the article sued upon":

"(a) Had the county auditor and his force worked diligently

during the summer, the county would have been saved $238.

"(b) It should be possible to secure employees (in the auditor's office) at $75 to $85 a month, who would be willing to devote eight hours per day to the work without idling away part of their time in reading newspapers and swapping stories, thus falling behind in their work.

"(c) Furthermore, better results might have been obtained had the auditor remained at home last fall instead of spending several weeks visiting fairs, thus delaying the work in his office.

"(d) After being allowed an extra month in which to prepare the tax books, it seems both unjust and unfair that those drawing such salaries should be paid $2 an evening for a few hours' work and then not get all the books ready within the time set by law.

"(e) The present auditor has been trying to give the book depositaries the impression that he had nothing to do with the lowering of the price on text-books, which means a loss to them, in profits. In this he is absolutely correct, because, when it came to printing of the price lists for books after the book adoption, he insisted on using the list price which is 33 1-3 per cent. above cost, instead of the price provided by law, which is 10 per cent. above cost. The present auditor was then deputy and acting auditor in the absence of his uncle, who was then spending an extended vacation in New York.

"(f) It is also suggested that school and township officers, who have found that the money they have levied for their organizations does not agree with the amount received, should go to the auditor's office and find out why there is a difference.

"(g) No one should be satisfied with an evasive answer. Find out what the law is regarding the system employed, and then get at the exact facts as to where the trouble originates."

This last referring to the same matter referred to in "f."

Respondent contends that:

"There are two ways by which words not actionable in themselves may become so by being published of a person in respect to his office: (1) Where the act charged would be punished by indictment, which would not be so if done by a person not in office; (2) where a libel or slander tends to disgrace and

disparage one in an office of profit or honor and deprive him of it, it not being necessary that the words should import a charge of crime."

And that said article charges him with:

"(a) Willful neglect in the discharge of the duties of his office as a public official; and approval of the neglect of duty of those under his supervision.

"(b) Incompetence and mismanagement in handling the affairs of his office.

"(c) Malfeasance and corruption in office.

"(d) Dishonesty, deceit, and deception."

There can be no question of the soundness of the legal proposition stated, and it is clear that the article in question is libelous per se if respondent is correct in the construction which he has placed upon the words of such article.

[1] Appellant urges that the complaint is insufficient in that it does not allege that the publication was unprivileged. There is no merit to this contention. It is alleged that the publication was malicious; if malicious, then, under the conceded facts of this case, it cannot be privileged, though, if there were no malice in fact, the publication, even though libelous per se, would be privileged. This question of privilege may affect the question of proof of malice when this case comes to trial, but cannot render the complaint insufficient, malice being alleged. Schull v. Hopkins, 26 S. D. 21, 127 N. W. 550, 29 L. R. A. (N. S.) 691, and cases therein cited.

[2] In the complaint, plaintiff, by innuendoes, has set forth the meaning which he imputes to the several portions of said publication. The office of an innuendo is not to enlarge the meaning of the words published; and, if the words used are neither actionable in themselves nor actionable when explained by the extrinsic facts alleged, the innuendo cannot attribute to the words a meaning which they will not bear. 18 Am. & Eng. Ency. Law, 982. If a publication is not actionable per se, it cannot be made so by an innuendo. It is only when the published words are equivocal or ambiguous and admit of several meanings that it is proper, by innuendo, to attribute to them such fixed and definite meaning as the pleader thinks they ought to bear. 25 Cyc. 449. While we believe that respondent, by the innuendoes

contained in his complaint, gave to the publication constructions entirely unsupported by the clear import of the words used, yet in part such innuendoes are clearly supported by the words used in the publication.

[3, 4] It is contended by respondent that excerpts "a," "b," and "c" charged plaintiff and his assistants with shirking the work in their office and with negligence therein; that such charges would have a natural tendency to injure plaintiff in his official capacity; and that such charges tended to hold plaintiff up to hatred, ridicule, and contempt. We think it clear that these excerpts are susceptible of a construction charging respondent with negligence in the performance of his official duties; and, if such excerpts may also be susceptible of an innocent construction, it was the province of the jury to construe such excerpts. Church v. New York Tribune Ass'n, 63 Misc. Rep. 578, 118 N. Y. Supp. 626.

Respondent contends that excerpt "d" charges him with being incompetent to discharge the duties of his office. We are utterly unable to find in this excerpt anything that, by any fair construction, can be held libelous, except in so far as this excerpt, like "a," "b," and "c," may charge neglect in the discharge of official duties.

[5] Respondent contends that excerpt "e" charges "malfeasance and corruption in office" in that "it charges him with seeking to force the public to pay a higher price for school books, so that the book depositaries might be benefited," and in that it further charges "that it was done knowingly." We think there is no support for respondent's contention. The publication did not charge that respondent *knew* that the law provides that books should be sold at 10 per cent. above cost. For all that appears in this excerpt, respondent might have acted in perfect good faith when "he insisted on using the list price which is 33 1-3 per cent. above cost." For an officer to be mistaken in his construction of a law comes far from corruption or malfeasance in office. If appellant had charged that respondent insisted on the 33 1-3 per cent. when he *knew* that the law provided for only 10 per cent. there would have been a charge of malfeasance in office.

[6] Respondent contends that excerpts "f" and "g," while

not containing a direct charge or crime or corruption, do "contain insinuations and veiled accusations, which, to the mind of the average reader, would convey the idea that respondent was guilty of a crime in conducting the affairs of his office." It is certainly true, as declared in Palmerlee v. Nottage, 119 Minn. 351, 138 N. W. 312, 42 L. R. A. (N. S.) 870, that:

"A charge need not be made directly; indeed, the venom and sting of an accusation is usually more effective when made by insinuations. The floating calumny, which each reader may attach to any and every official act which his aroused suspicions may lay hold of, is capable of inflicting graver injury and injustice than a direct, specific charge, which may be squarely met and refuted, if untrue."

Respondent, in his complaint, by innuendo alleged that by these excerpts appellant intended to charge respondent with embezzlement. We do not think that the words used are fairly susceptible of any such construction. Upon the other hand, one reading these parts of the article published could draw but one of two conclusions: (1) That the writer intended to accuse respondent of official incompetency; or (2) that he intended to accuse him of malfeasance in office—as it certainly would be malfeasance in office for one to so keep his official records as to cover up errors therein. It would be the province of the jury to say what was the fair import of these excerpts.

We are therefore of the opinion that the article published charged respondent with neglegt of official duties, and either with being incompletent to properly perform such duties, or else with malfeasance in office in that he knowingly kept the books of the office in an improper manner. While such charges, even though false, might, when made from proper motives by one believing them to be true, be privileged and therefore not the basis of a cause of action for libel, yet, when published maliciously by one knowing their falsity or in reckless disregard of their truth or falsity, they, if libelous per se, are sufficient upon which to ask for damages without allegation or proof of special damages.

[7] The question thus presenting itself is whether it is libelous per se to charge a public official with neglect of official duties, with incompetency in office, and with malfeasance in office.

We think it is.   While the extent of neglect, the degree of in-competency, or the gravity of the malfeasance charged may affect the amount of damages suffered by the injured party, yet the na-ture of the charge remains the same; it may vary in degree but not in kind.   Libel is defined in our statutes (section 29, C. C.) as follows:

"Libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

It needs no argument to demonstrate that it would injure respondent in his occupation as a public officer and injure him in his candidacy for re-election to the office he held if the people of his county should be led to believe in the truth of any of these charges.   It stands admitted that they were made maliciously and with knowledge of their falsity.   That they were published for the purpose of influencing and in hopes that they would in-fluence the voters of Minnehaha county is apparent even if such purpose had not been pleaded.   The Supreme Court of California, in speaking of a statutory definition of libel almost word for word the same as that contained in section 29, C. C., supra, said:

"This definition is very board, and includes almost any lan-guage which upon its face has a natural tendency to injure a man's reputation either generally or with respect to his occupa-tion."   Schomberg v. Walker, 132 Cal. 227, 64 Pac. 291.

And that court also said:

"Language which is fairly included in such definition is libelous per se.".

We think the law and the reason therefor well stated in Williams v. Davenport, 42 Minn. 393, 44 N. W. 311, 18 Am. St. Rep. 519:

"Without entering into a discussion of the many distinctions and refinements, impossible to harmonize, which have found a place in the text-books, as well as in the utterances of some of our courts, upon the subject of slander and libel, it may safely be asserted that published words are actionable which directly tend to the prejudice or injury of any one in his office, profession, trade, or business.   Starkie, Sland. § 117.   The injury connsists

in falsely and maliciously charging another with any matter in relation to his particular trade or vocation which, if true, would render him unworthy of employment. 2 Kent, Comm. (13th Ed.) 17."

In further support or views herein, we cite Knox v. Meehan, 64 Minn. 280, 66 N. W. 1149; Jarman v. Rea, 137 Cal. 339, 70 Pac. 216; Scougale v. Sweet, 124 Mich. 311, 82 N. W. 1061; Martin v. Paine, 69 Minn. 482, 72 N. W. 450; Church v. New York Tribune Ass'n, supra.

The order appealed from is affirmed.