EGAN, Appellant, v. EASTWOOD et al., Respondents.

(153 N. W. 917.)

(File No. 3701.   Opinion filed August 7, 1915.)

1. **Libel and Slander—Libelous Article, Meaning of—Jury to De-termine—Constitution—Statute.**

Under Const. Art. 6, Sec. 5, declaring that in libel cases the jury shall determine the fact and the law, **held,** that the right of the judge to declare the meaning of an alleged libelous pub-lication is taken away, except, perhaps, where the language admits of only one construction; and if the article is susceptible of the meaning claimed for it by plaintiff, it presents a case for the jury, although the same matter may be susceptible of a different and wholly innocent meaning; and it is for the jury to say, after an inspection of the article, what would naturally be understood therefrom by the ordinary reader; following Myers v. Longstaff, 14 S. D. 98.

2. **Libel and Slander—Statement in Newspaper—Denunciation of Verdict—Non-Libelous Publication—Demurrer.**

Where plaintiff in a former libel suit recovered a verdict against the owners of a newspaper, and defendants in the present suit, owners of another newspaper, denounced the verdict, not because the charges made in the newspaper against whose owners the verdict was rendered were true, or because defendants in the present suit believed them to be true, but because, in their opinion, the charges so published were in the nature of privileged communications; in which article in the present suit it was further stated that plaintiff was gifted with dramatic ability and eloquence, with magnetism, and brought to his aid the beautiful girl wife of his bosom, that a man's eloquence nor a newspaper's utterances can not make black white, and white black, that an individual is his own worst enemy, that if a man is pure at heart and lives a clean life no newspaper can permanently injure him, that if a man seeking public office is believed to be unfit, the public is entitled to know what manner of man he is, and that if an editor is satis-

fied that the candidate is unfit, it is his legal right and moral
duty to. publish what he believes to be the truth, **held**, that the
article does not accuse plaintiff of any offenses charged in the
other newspaper article, nor even insinuate that he is guilty
thereof, and the article is not libelous, and does not reflect
upon plaintiff; nor should the articles published in the other
newspaper be read into the editorial published by defendants;
and the demurrer to the complaint alleging the article in ques-
tion was properly sustained.

Appeal from Circuit Court, Codington County.   Hon. CARL
G. SHERWOOD, Judge.

Action by George W. Egan against George H. Eastwood and
Lydia R. Eastwood, to recover damages for libel.   From an order
sustaining a demurrer to the complaint, and refusing to permit
plaintiff to amend, he appeals.   Affirmed.

*George W. Egan*, Appellant, pro se.

*Case & Case*, for Respondents.

(2) Under point two of the opinion, Appellant cited:   Brown
v. Providence Telegram Pub. Co., (R. I.) 54 Atl. 1061; D'Auxy
v. Star Publishing Co., 64 N. Y. S. 283; Palmerlee v. Nottage,
138 N. W. 312.

Respondent cited:   Newell on Libel and Slander, pp. 291,
579, 2nd Ed.

POLLEY, J.   Defendants are alleged to be the joint own-
ers, editors, and managers of the Watertown Herald, a weekly
newspaper published and printed in Watertown, and which news-
paper is of general circulation throughout the state.   Plaintiff
alleges that he is a lawyer and lecturer, by profession, and that,
prior to certain acts of defendants hereinafter to be set forth, he
enjoyed a large and lucrative practice as a lawyer and was in
demand as a lecturer and public speaker to deliver lectures on
various topics and subjects at a very remunerative compensation.
He also alleges that, prior to said acts on the part of defendants,
he had a large circle of friends in Codington county and through-
out the state; that he enjoyed the confidence, esteem, and respect
of his said friends and associates, was of good fame and reputation
in the circle in which he moved, the community in which he
lived, with all people with whom he came in contact, and enjoyed
the peace and happiness of family and friends.   Plaintiff further
alleges in his complaint that, during the month of May, 1912, the

Watertown Public Opinion, a daily newspaper published at Watertown, published certain articles of and concerning this plaintiff wherein he was charged with the commission of rape, robbery, attempted blackmail, extortion, larceny, with ungentlemanly conduct, and with being unprofessional in his conduct as an attorney at law, that he was a grafter and trickster, and that he was insincere and unreliable; that, after the publication of said articles, plaintiff commenced an action for libel in the circuit court of Codington county, against the Public Opinion Publishing Company, the publisher of said daily newspaper; that, in said action, he recovered a verdict for damages in the sum of $10,000; that this verdict was rendered on the 20th day of November, 1913; and that on the 26th day of November, 1913, defendants published in the said Watertown Herald the following editorial, to-wit:

"The Herald feels impelled to denounce the $10,000 verdict given in the Geo. W. Egan case against the Public Opinion Publishing Company. The articles published in the Public Opinion were, in our opinion, clearly of the nature of privileged communications, concerning a candidate for office.

"It is true that George Egan is gifted with dramatic ability and eloquence, coupled with considerable magnetism, and he brought to his aid, 'the beautiful girl wife of his bosom.' The verdict in this case does not alter the fact. Nor can a man's eloquence, nor can a newspaper's utterances, make black white, and white black. An individual is his own worst enemy. As a man thinketh, so he is. If a man is pure at heart and lives a clean life, no newspaper can permanently injure him, as an unwarranted attack will redound to his credit, instead of his detriment.

"If a man seeking public offices is believed to be unfit, the public is entitled to know what manner of man is seeking the position, and if, upon reasonable investigation, an editor is satisfied that the candidate is unfit, it is his legal right and moral duty to publish what he believes to be the truth. The newspapers in Codington county are largely to blame for the feeling against them in the minds of the jurors."

Plaintiff alleges that said article was false and untrue, and was known to defendants at the time of its publication to be false

and untrue, and that the publication thereof was wrongful, unlawful, and malicious, and was maliciously published and circulated by defendants for the purpose of and with the intent to damage plaintiff in his business as a lawyer and lecturer and to injure him in his standing as a citizen, and that the publication thereof did damage him in his business and lowered him in the estimation of his family and friends and caused him grievous mental suffering and anguish—all to his damage in the sum of $25,000. To this complaint defendants interposed a general demurrer, on the ground that said complaint does not state facts sufficient to constitute a cause of action; and, from an order sustaining said demurrer and refusing to permit plaintiff to amend his complaint in certain particulars, plaintiff appeals.

[1, 2] In his complaint, plaintiff divided the article complained of into seven separate statements or paragraphs, and, by appropriate innuendoes attached to each separate paragraph, attempted to show the libelous character thereof and the manner in which it applies injuriously to himself. If the article published by defendants is susceptible of the meaning claimed for it by plaintiff, then it presents a case for the jury, although the same matter may be susceptible of a different and wholly innocent meaning. As was said by this court in Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233:

"The rule is that, where an article alleged to be libelous is susceptible of two meanings, it is for the jury to say, after an inspection of the article, what would naturally be understood therefrom by the ordinary reader."

And, again, in the same opinion, after quoting section 5, art. 6, of our Constitution, the court said:

"It will thus be seen that the framers of our organic law have carefully guarded the rights of a defendant in an action for libel, by declaring that the jury in such cases shall determine the fact and the law, evidently intending thereby to take from the judge the right (except, perhaps, in cases where the language admits of only one construction) to declare the meaning of an alleged libelous publication."

Tested by this rule, is there anything in the article in question that, by any fair or reasonable construction, can be held to be libelous or that presents a case for the jury? The article

must be read as a whole, and its various paragraphs and statements must be considered with reference to and as modified by each other. Viewed in this light, we fail to find anything that is libelous or that reflects upon plaintiff. It does not, either directly or indirectly, accuse plaintiff of any of the offenses charged in the Public Opinion, nor does it even insinuate that he is guilty of any of the offenses charged therein. The defendants denounce the verdict of $10,000 against the Public Opinion; not, however, because the charges made in Public Opinion are true, or that they believe them to be true, but because, in their opinion, the articles published in Public Opinion are in the nature of. privileged communications concerning a candidate for office. But this is an opinion that every one has a right to entertain and express. Nor do we see how plaintiff's case would be strengthened by setting out therein the articles that were published in Public Opinion. Defendants are in no wise responsible for their publication and make no reference to the truth or falsity of such articles, and they should not be read into the editorial published by defendants.

We believe the demurrer was properly sustained, and the order appealed from is affirmed.