BRODSKY, Appellant, v. THE JOURNAL PUBLISHING CO., A CORP., Respondent

(42 N. W.2d 855)

(File No. 9103. Opinion filed May 29, 1950)

**Charles E. Carrell,** Deadwood, for Plaintiff and Appellant.

**Bangs & McCullen, Robert W. Gunderson,** Rapid City, for Defendant and Respondent.

ROBERTS, J. This appeal is by plaintiff from a judgment entered upon a verdict directed for the defendant.

Plaintiff sets forth in his complaint two causes of action. It is not necessary to an understanding of the questions presented to set forth the pleadings and facts in their entirety. The complaint so far as material on this appeal alleges that plaintiff is the owner of a packing plant at Spearfish and wholesales meats and does "custom butchering for customers throughout the west river country". Plain-

tiff bases his action for libel on the following article published in the Rapid City Journal in the issue of February 10, 1949:

"Tainted Beef Found in Northern Hills Town"

"Tainted beef which might have filtered into the retail meat markets has been discovered in a town in the northern Hills, J. H. Fryberger, state food inspector announced today.

"Fryberger said five carcasses had been located yesterday afternoon and he is continuing his investigation as speedily as weather permits to determine if more of the storm-stricken animals are being marketed in the West River.

"Animals which died of starvation or exposure during the blizzard and subsequent storms are filled with toxic poison, the food inspector reminded.

"Any sale of such tainted meat makes the retailer liable to prosecution for selling food unfit for human consumption.

"The carcasses found in the Northern Hills will be used for tankage or destroyed.

" 'No amount of cooking can make the meat fit to eat,' Fryberger concluded."

It is alleged that the language quoted referred to the plaintiff and that defendant intended and did convey the meaning to its readers that plaintiff was about to offer for sale tainted meat; that the same is false and defamatory; and that plaintiff has been injured in his reputation and in his business and occupation and has otherwise been greatly damaged, all to his damage in the sum of $30,000.

For a second cause of action, plaintiff by reference re-alleges the allegations contained in the first cause of action and then alleges that pursuant to the provisions of SDC 47.-0504 he served notice upon the defendant to retract the statement claimed to be false and defamatory and that defendant refused to make such retraction.

Defendant filed an answer admitting publication of the article, but specifically denied that the same was false or malicious.

Plaintiff contends here (1) that certain excluded evidence should have been received and (2) that motion for directed verdict should have been denied.

■ ■ It is well settled that if an article it not libelous per se special damages resulting from the publication must be particularly alleged. Adams v. Scott, 33 S.D. 194, 145 N.W. 446; Niblo v. Ede, 35 S.D. 359, 152 N.W. 284. In the Adams case this court said: "Where the words are clearly actionable per se, it is only necessary to make a general claim for unliquidated damages. But any special damage that has accrued must in every case be specifically stated, and with sufficient particularity to enable the defendant to know precisely what case he has to meet; otherwise such evidence will be rejected at the trial." [33 S.D. 194, 145 N.W. 447]

Special damages are the natural and proximate, but not the necessary, result of the wrong complained of and do not follow by implication of law upon proof of the publication of the defamatory words. They must therefore be especially claimed in the pleadings and evidence of them must be given at the trial. No special damages are alleged and the law with respect to words or publications actionable only per quod is not invoked.

"Libel" is defined by SDC 47.0502 as follows: "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

■ In determining whether an article is libelous per se within the statutory definition, the language of the publication alone can be considered, without the aid of any pleaded innuendo or explanatory circumstances. 53 C.J., Libel and Slander, § 8. In Howe v. Thompson, 35 S.D. 1, 150 N.W. 301, 303, it is said: "The office of an innuendo is not to enlarge the meaning of the words published; and, if the words used are neither actionable in themselves nor actionable when explained by the extrinsic facts alleged, the innuendo cannot attribute to the words a meaning which they will not bear. 18 Am. & Eng. Ency. Law 982. If a

publication is not actionable per se, it cannot be made so by an innuendo."

■ ■ Defendant contends that if the published article could possibly bear a defamatory meaning, it cannot be considered libelous per se as to the plaintiff. We think that this contention must be sustained. It must appear that the alleged defamatory language refers to some ascertained or ascertainable person and that person must be the plaintiff. 53 C.J.S., Libel and Slander, § 11; see also annotation in 91 A.L.R. 1161 and Restatement of the Law of Torts, § 564. We recognize that an action may be maintained where the defamed person is not named, but is sufficiently identified by reference in the article to facts and circumstances from which others may understand that such person is referred to. Barron v. Smith, 19 S.D. 50, 101 N.W. 1105; Ramharter v. Olson, 26 S.D. 499, 128 N.W. 806, Ann. Cas., 1913B, 253. There is no mention of plaintiff in the alleged defamatory article. Plaintiff contends that reference therein to a "town in the northern Hills" was sufficient to identify him. These words are applicable to other towns than Spearfish where plaintiff has his place of business and there is no reference to facts and circumstances from which readers might know that plaintiff was referred to as the person allegedly defamed. Plaintiff sought to show by circumstances that the writer of the published article had him in mind, but his unpublished intention is not material.

■ ■ Plaintiff contends that it was for the jury to determine whether or not the published article had reference to him. He relies upon the language of the Constitution of this state which provides in section 5 of article 6 as follows: "In all trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense. The jury shall have the right to determine the fact and the law under the direction of the court." Constitutional provisions and statutes having similar import have been adopted in other jurisdictions. Springer v. Swift, 59 S.D. 208, 239 N.W. 171, 78 A.L.R. 1171. A review of the cases which have construed such provisions justifies the conclusion that they have not taken from the court or imposed upon the jury the duty of determining

whether a communication is capable of a defamatory meaning. Egan v. Eastwood, 36 S.D. 42, 153 N.W. 917; 53 C.J.S., Libel and Slander, § 223(b); see also annotation in 33 L.R. A.,N.S., 207. Where, however, an article alleged to be libelous is susceptible of different interpretations, one of which is defamatory and the other not, a question for the jury is presented. Myers v. Longstaff, 14 S.D. 98, 84 N.W. 233. Whether the published article in the instant case was libelous per se was a question for the court.

The judgment appealed from is affirmed.

All the Judges concur.