No. 13579

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

_____

JEFFREY GRANGER and DAVID GRANGER,

Plaintiffs and Appellants,

-vs-

TIME, INC., a Corporation,

Defendant and Respondent.

_____

PHOEBE ANN GOLD; DR. ALLAN J. GOLD;
ERNEST P. COHEN; JESSE M. COHEN;
OLIVER R. LEVY; J.M. SHERICK and
DIANE M. SHERICK, Husband and Wife,
and JODI, INC.,

Plaintiffs and Appellants,

-vs-

TIME, INC., a Corporation,

Defendant and Respondent.

_____

Appeal from:   District Court of the Second Judicial District,
               Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

    For Appellants:

        Henningsen, Purcell & Genzberger, Butte, Montana
        Rex F. Henningsen appeared, Butte, Montana
        Corette, Smith & Dean, Butte, Montana
        Kendrick Smith argued, Butte, Montana

    For Respondents:

        Crowley, Haughey, Hanson, Gallagher and Toole, Billings
         Montana
        Bruce R. Toole argued, Billings, Montana
        Harold R. Medina, Jr. argued, New York, New York

_____

Submitted:  May 19, 1977

Decided: AUG 3 0 1977

Filed: AUG 3 0 1977

_____
                        Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Plaintiffs appeal from the district court's ruling in this libel action granting defendant's motions for summary judgment.

Defendant, Time, Inc., publishes a national weekly news magazine. The subject of this lawsuit concerns an article which defendant published in its September 22, 1975, issue, entitled "Into the Pit". The article described how the City of Butte, which owed its birth and former prosperity to first gold, and then copper mining was being relentlessly swallowed by Anaconda Company's ever expanding open pit copper mining operation. Defendant in the article noted the economic deterioration in "the once-stylish uptown district", observed that virtually no major construction had taken place in Butte since 1962, and asserted that "Arson has become common as people who are unable to sell their devalued buildings burn them for the insurance."

Each of the plaintiffs had ownership interests in either the Penney Building or the Pennsylvania Building. Fire destroyed the Penney Building on February 28, 1972, and destroyed the Pennsylvania Building on August 20, 1975. Plaintiffs, in a letter dated October 29, 1975, informed defendant that they believed the statement in the article concerning arson referred particularly to them and was false and libelous. Plaintiffs informed defendant of its opportunity under section 64-207.1, R.C.M. 1947, to correct the allegedly libelous matter. Defendant failed to retract its statement concerning arson in the manner prescribed by the statute, and plaintiffs, on December 19, 1975, filed a complaint in district court, Silver Bow County, alleging that defendant had libeled them by the statements concerning arson in the article, "In the Pit".

Defendant filed a motion to dismiss plaintiffs' complaints

for failure to state a claim upon which relief could be granted. The district judge denied defendant's motion to dismiss. Defendant subsequently filed its answer, denying the assertions in plaintiffs' complaints that the arson statement was made of and concerning plaintiffs and that the article was prepared with a reckless disregard of the truth, and asserting that the statements contained in the article were protected by the freedom of speech and press guarantees of the First Amendment.

Plaintiffs and defendant thereafter filed the following four exhibits:

(1) An "Editorial Reference File", containing the reference material upon which defendant based its article and the successive drafts of the article;

(2) a "Memorandum for Counsel", containing interviews with the persons involved in the investigation, writing, and publishing of the article;

(3) "The Butte Fire Memorandum", containing copies of the fire incident statistical reports of the State Fire Marshall Bureau of the State of Montana, Department of Justice, for the years ending 1974 and 1975 and an analysis of fires during 1965-1975 in an arbitrarily selected 58 square block area in the central business district of Butte; and,

(4) a "Memorandum of Testimony" on behalf of plaintiffs, containing interviews with each of the plaintiffs and with their attorney. Plaintiffs and defendants stipulated that the statements of the _Time, Inc._, employees and statements of plaintiffs and their attorney as contained in the exhibits, were what " * * * in substance and effect" they would testify to "for the purpose of any motion or for the purpose of trial * * *."

Defendants, on May 6, 1976, filed a motion for summary judgment and a memorandum in support of their motion. Plaintiffs,

- 3 -

on May 17, 1976, filed a cross-motion for summary judgment, solely on the issue of liability, and likewise supported their motion with a legal memorandum. On May 19, 1976, defendant moved to disqualify the district judges of the second judicial district, Silver Bow County. The Honorable Robert J. Boyd, judge of the third judicial district, was thereupon appointed to hear all further matters in the cause.

Plaintiffs and defendant argued the merits of their respective motions for summary judgments before Judge Boyd on July 9, 1976. The district judge entered summary judgments for defendant because:

> "Viewing the matter as a stranger and with no
> special knowledge possessed of the parties,
> the Court is unable to ascertain any language
> in the article which refers to some ascertainable
> or ascertained person * * *."

Plaintiffs raise the following issues in their appeal from the district court ruling:

1. Did the district judge, by granting defendant's motions for summary judgment, reverse the previously disqualified district judge's denial of defendant's motion to dismiss and thereby improperly exercise appellate jurisdiction?

2. Did the evidence support the district court's granting of defendant's motions for summary judgment?

Plaintiffs contend that Judge Boyd was without jurisdiction to grant defendant's motions for summary judgment. District Judge James Freebourn had earlier denied defendant's motions to dismiss plaintiffs' complaints for failure to state a claim. After Judge Freebourn was disqualified and Judge Boyd was assigned to the case, Judge Boyd granted defendant's motions for summary judgments. Plaintiffs assert that Judge Boyd's granting of defendant's motion for summary judgments was the equivalent of a reversal of Judge Freebourn's denial of defendant's motions to

- 4 -

dismiss, and an improper exercise of appellate jurisdiction by a trial judge.

The obvious flaw in plaintiffs' argument is that motions to dismiss for failure to state a claim and motions for summary judgment are distinct motions involving different questions of law, and having different legal effects. Rule 12(b)(6), M.R. Civ.P., motion to dismiss is based solely on the allegations that a plaintiff has made in his complaint. The denial of defendant's motions to dismiss by Judge Freebourn was the law of the case solely as to the sufficiency of the complaint. The denial of the motions to dismiss meant that, in light of the complaint alone, the trial court could not state " * * * for certain that plaintiff is entitled to no relief under any state of facts which might be proved in support of the claim." Keilmann v. Mogan, 156 Mont. 230, 233, 478 P.2d 275.

Judge Boyd's granting of defendant's Rule 56, M.R.Civ.P., motions for summary judgment, however, was a decision on the merits of the case, and not merely a determination of the sufficiency of the allegations in the complaint. In granting defendant's motions for summary judgment, Judge Boyd considered matters outside the complaint, including briefs and oral arguments of counsel, written statements of witnesses, and various statistical data concerning fires in Butte. The granting of the motions for summary judgment signified that, in light of the complaint and the evidence before the court, there remained no disputed material issue of fact which plaintiffs could prove to entitle them to recover. Judge Boyd properly exercised his trial court jurisdiction in ruling on the motions for summary judgment. See Amann v. Northern Pacific Railway Co., 130 Mont. 11, 18, 292 P.2d 753 (1955), for an expression of this rationale in a pre-rules case.

Plaintiffs next contend that the trial judge erred in

granting defendant's motions for summary judgments. The trial judge held, as a matter of law, that the statement that "Arson has become common as people who are unable to sell their devalued buildings burn them for the insurance" does not point to any ascertainable person. The judge further noted that nothing in the record indicated that the buildings owned by plaintiffs were "devalued". Finally, the trial judge recognized that, based on the information contained in the "Butte Fire Memorandum" exhibit, the group of "people who are unable to sell their devalued buildings" could include from 204 to 481 persons. Because plaintiffs had not, in the trial court's view, presented evidence sufficient to raise a factual question as to whether they were the specific people in the group referred to, the court held that the common law group libel rule precluded their recovery.

Plaintiffs agree that there is no material issue of fact as to liability, but assert that, as a matter of law, they should be granted summary judgment as to liability, with damages to be determined at trial. Plaintiffs assert that defendant is clearly liable for libel under section 64-203, R.C.M. 1947, because the article was printed by defendant, distributed in Montana and nationwide, falsely accused plaintiffs of a crime (arson) and was written "of and concerning the Plaintiffs."

The crucial issue in this case, as to defendant's liability for defamation under Montana law, is whether the article was published "of and concerning" plaintiffs. See Rowan v. Gazette Printing Co., 74 Mont. 326, 331, 239 P. 1035; Schaffroth v. The Tribune, 61 Mont. 14, 17, 201 P. 271. Where a plaintiff is not named in the allegedly libelous statement, he may present evidence of the surrounding circumstances and facts to meet his burden of proving that he was the person to whom the statement referred. Nolan v. Standard Publishing Co., 67 Mont. 212, 216 P. 571. If

- 6 -

the arson charge in the article was false and was understood by readers to specifically refer only to plaintiffs or to refer to plaintiffs as members of a group small enough that the defamation may reasonably be understood to apply to each group member, plaintiffs could recover. If, however, the statement concerning people burning their buildings was reasonably understood by readers of the article to refer to a large group, of which plaintiffs were members, neither plaintiff nor any other member of the large group has a cause of action for defamation. 3 Restatement of Torts 2d, §564A. "As the size of the group increases, it becomes more and more difficult for the plaintiff to show he was the one at whom the article was directed, and presently it becomes impossible.* * * " Louisville Times v. Stivers, 252 Ky. 843, 68 S.W.2d 411, 412.

The district judge, in granting defendant's motions for summary judgment, relied on information contained in the "Butte Fire Memorandum" exhibit. The memorandum, which contained records of the Butte Fire Department and the State Fire Marshall Bureau of the Montana Department of Justice, showed that during the period 1965-1975 in uptown Butte there were 159 fires, 56 of which were attributed to arson, in buildings owned by a minimum of 204 persons. In the entire city of Butte during 1974-1975, there were 481 fires, 108 of which were attributed to arson or suspicious acts. The district judge held that using either the 204 or 481 figures, the group of owners of buildings which had burned was too large to cause a reader of the article to reasonably believe that the arson charge was directed at plaintiffs.

Did plaintiffs prove by extrinsic facts and circumstances that there remained a material issue of fact as to whether the seemingly broad statement in the article, charging "people" with burning their devalued buildings for the insurance, in fact was reasonably understood by certain readers to be specially directed

at these plaintiffs? Plaintiffs rely on the following facts in the court's exhibits: The investigator and author of defendant's article talked with people about only four fires in uptown Butte, two of which fires are the subject of this litigation; defendant had no information at the time it published its article as to any of the other fires listed in the "Butte Fire Memorandum"; no stipulation was made as to the cause of the fires or their relevancy; a prior draft of the article referred to "businessmen" burning their devalued buildings, which was changed to the published reference to "people" on the advice of the article's author that they could not state as a fact that local businessmen were the ones committing the arson. Plaintiffs assert that these facts show that defendant specifically had plaintiffs in mind by its reference in the article to "people" and that printing the arson charge, despite the author's warning that they could not prove that businessmen were arsonists, constituted actual malice due to a "deliberate disregard of the truth and a reckless disregard of the falsity of the statement."

Plaintiffs have failed to show that the arson charge, applicable on its face to a very large group, was reasonably understood to apply specifically to plaintiffs. Even if we assume arguendo that the author of defendant's article had knowledge of only four fires in the business district, and that defendant meant in its article to refer only to those four fires, and even if we further ignore defendants statements to the contrary, plaintiffs have failed to meet their burden of establishing a case for defamation. Whom the author has in mind when he publishes his article is not determinative of the issue of liability. Libel and damage consist in the apprehension of the hearers, not in the mind of the author of the statement. Goldborough v. Orem & Johnson, 103 Md. 671, 64 A. 36. " * * * Plaintiff sought to show by circumstances that the writer of the published article had him in mind, but his

unpublished intention is not material." Brodsky v. Journal Publishing Co., 73 S.D. 343, 42 N.W.2d 855, 857; Accord, Helmicks v. Stevlingson, 212 Wis. 614, 250 N.W. 402.

Nor is it relevant to establishing a libel cause of action that plaintiffs perceived that the allegedly defamatory statement applied to them. In order that there be actionable libel, under section 64-203, R.C.M. 1947, a plaintiff must show that people in the community other than the plaintiff perceived the statement to refer to the plaintiff. Without satisfying this requirement, there clearly would not be the injury to reputation or occupation that the statute requires. " * * * the test is neither the intent of the author nor the recognition of the plaintiff himself that the article is about him, but rather the reasonable understanding of the recipient of the communication." Robinson v. Guy Gannett Publishing Company, 297 F.Supp. 722, 726 (D. Maine 1969).

Plaintiffs in this case could have introduced as evidence the statements of readers familiar with the circumstances in Butte at the time the article was published to show that on reading the article the readers knew the arson accusation was directed at plaintiffs. Marr v. Putnam, 196 Or. 1, 246 P.2d 509, 516; Houston Printing Co. v. Moulden, 15 Tex.Civ.App. 574, 41 S.W. 381, 386. Plaintiffs evidence in their exhibit "Memorandum of Testimony and Statement", however, dealt solely with plaintiffs own emotional reactions to the article. The only references to reactions of others were statements by plaintiffs themselves concerning a comment made to one plaintiff at a cocktail party that the statement in the article was a terrible thing to do to him and other property owners, and the statement of another plaintiff that, although people told her the article was inaccurate and an unfair statement, no one accused her of setting the fire, except perhaps in a joking manner.

Plaintiffs have agreed that all matters were before the

court, from the pleadings and exhibits, on which to render a decision as to liability. If readers of the allegedly libelous article reasonably concluded that the arson charge was directed at plaintiffs, plaintiffs failed to introduce any readers' statements to that effect, and failed to offer any reason for their failure to include such statements in the exhibits offered to the district court. " * * * When on the record there is no genuine issue as to any material fact before the court the burden is on the party opposing the motion for summary judgment to present facts of a material and substantial nature raising a genuine issue. The trial judge has no duty to anticipate possible proof that might be offered." Brown v. Thornton, 150 Mont. 150, 155, 432 P.2d 386 (1967). From the pleadings and exhibits, we can discern no evidence to show the general statement in the article as to arson was reasonably understood by readers to specially apply to plaintiffs rather than to the large group of 200-400 "people" whose buildings in Butte were destroyed by fire.

In denying relief to a taxicab driver who was a member of a defamed group of 60 taxi drivers, the District of Columbia District Court stated:

> "In case of a defamatory publication directed against a class, without in any way identifying any specific individual, no individual member of the group has any redress. The reason for this rule is that ordinarily a defamatory statement relating to a group as a whole, does not necessarily apply to every single member. A minority not intended to be castigated has no legal cause for complaint * * *." Fowler v. Curtis Pub. Co., 78 F.Supp. 303, 304-305 (D. D.C. 1948), aff'd., 182 F.2d 377 (D.C. Cir. 1950).

Because the allegedly defamatory statements cannot reasonably be interpreted as applying specifically to plaintiffs, the common law group libel rule precludes their recovering in a defamation action. We adhere to this common law principle because the definition of libel in section 64-203, R.C.M. 1947 "is

but a statement of the common law rule". Manley v. Harer, 73 Mont. 253, 260, 235 P. 757. It is therefore unnecessary to discuss whether the statement in the article concerning arson was in fact true, or whether plaintiffs even fell within the article's description of owners of "devalued" buildings.

Plaintiffs and defendant have also extensively and ably argued the issue of whether defendant's statements in the article would be protected by the First Amendment, in the event that the statements ran afoul of Montana's libel law. The parties have discussed the Supreme Court decisions in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L Ed 2d 686, 95 ALR2d 1412; Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L Ed 2d 789; and Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L Ed 2d 154, and have argued what standard of fault this state should require a plaintiff to prove in libel actions involving a defamed private party plaintiff and a broadcaster or publisher defendant. This issue requires a careful balancing of the First Amendment freedoms of speech and press, and the personal dignity interests underlying the law of defamation. Because this case has been settled on a nonconstitutional basis, we save for another day the determination of whether a publisher who defames a private party shall be liable in this state for "negligent" publishing of the libelous statements or only for libelous statements published with "actual malice".

The judgment of the district court is affirmed.

_____
Chief Justice.

- 11 -

We concur:

_Gene B. Daly_

_Frank I. Haswell_

_Daniel J. Shea_
Justices