Merton GLOVER, Leonard Schultz, Donald Deckert, et al., Appellants,

v.

NATIONAL BROADCASTING COMPANY, INC., a Wholly Owned Subsidiary of R.C.A. Corp., a Delaware Corporation, and Fred Briggs, Appellees.

No. 78–1835.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1979.

Decided March 23, 1979.

Ronald L. Schultz, Batesland, S. D., filed brief for appellants.

Carleton G. Eldridge, Jr., of Coudert Brothers, Pierre, S. D., Robert C. Riter, Sr., and Robert D. Hofer of Riter, Mayer, Hofer & Riter, New York City, filed brief for appellees.

Before BRIGHT and STEPHENSON, Circuit Judges, and LARSON, Senior District Judge.*

## ORDER

Forty-six individual plaintiffs (collectively, appellants) appeal from the district court's grant of summary judgment in this libel action in favor of the defendants-appellees, National Broadcasting Company (NBC) and Fred Briggs. We affirm.

The appellants are alleged in the complaint to be ranchers leasing land on the Pine Ridge Indian Reservation in South Dakota or persons closely associated with such ranchers. Appellants complain that the following statements, made by appellee Briggs during the April 6, 1973, NBC Nightly News broadcast, libeled them:

Even though there are no more treaties being made, the Indian is still in a sense losing some of his land . . . mostly through leasing. For example, more than 90% of the land here on the Pine Ridge Sioux Reservation is leased to non-Indians . . . ranchers, mostly.

The ranchers lease this land at a very low price and then generally, are able to get FHA loans to help them get their herds started. This is something the In-

dian *can't* do. He cannot get a government loan and most banks won't loan to him for the same purpose. [Emphasis in original.]

They also assert the following statements, made by Briggs later in the same broadcast, as libelous *per se* :

The Indian lives his squalid (Porcupine S.D.) reservation life wondering if any of this will come to pass. He lives on a subwelfare level dole . . . furnished partly by the collective rent from white ranchers using his land . . . . [.] [1]

Appellants claim that the quoted statements were maliciously intended to cause millions of television viewers to conclude that the appellant ranchers, because they have leased lands on the Pine Ridge Indian Reservation from Indian owners, have taken unjust advantage of the Indians and are responsible for the Indians' subwelfare level of living.

On September 13, 1978, the district court, after considering the depositions and briefs submitted by the parties, granted the appellees' motion for summary judgment. In its unpublished memorandum opinion, the court stated:

[T]here is no possible construction which can be given to these statements which will render any of them libelous per se. The statements are unambiguous and non-defamatory. First of all, none of the statements involves any direct derogatory remarks about any of the [appellants] individually or about any group of ranchers who leased lands from Indian landowners at the time of the April [6th] broadcast.

\* \* \* \* \* \*

Furthermore, no pleaded or implied innuendo can transform the statements

---

\* EARL R. LARSON, United States Senior District Judge, District of Minnesota, sitting by designation.

1. Briggs, employed at the time by NBC as a television reporter and commentator, made the allegedly libelous statements as part of a background report related to NBC news coverage of

the March 1973 "occupation" of Wounded Knee, South Dakota, by dissatisfied Native Americans. No mention was made in this April 6, 1973, NBC news broadcast of any names or other identifying characteristics of individual ranchers.

made during this broadcast from non-defamatory observations into libelous utterances.

The district court further determined that the appellants had failed to plead any special damages, which would be necessary to support a cause of action for libel in the absence of statements which are libelous *per se.*

 Upon reviewing the record, including the allegedly defamatory statements, we agree with the district court's determination that, as a matter of law, the statements alleged to have libeled the plaintiffs are not libelous *per se.*

 Under South Dakota law, which governs this lawsuit, an action for libel cannot be maintained, in the absence of statements which are libelous *per se*, without particular allegations of special damages caused by the statements in issue. *E. g., Brodsky v. Journal Publishing Co.,* 73 S.D. 343, 42 N.W.2d 855, 856 (1950). Moreover,

> "any special damage that has accrued must in every case be specifically stated, and with sufficient particularity to enable the defendant to know precisely what case he has to meet; otherwise such evidence will be rejected at the trial." [*Brodsky v. Journal Publishing Co., supra,* 42 N.W.2d at 856.]

 Although the appellants' pleadings contain general assertions of harm suffered by appellants allegedly resulting from the April 6, 1973, broadcast, no specific incidents of damage are alleged. In addition, upon the appellees' motion for summary judgment, the appellants failed to support their conclusory allegations of damages by affidavits or otherwise.

 Summary judgment is an extreme remedy and is to be granted only where the record clearly demonstrates no genuine issue of material fact. However, the party opposing a motion for summary judgment may not rest upon his pleadings but must set forth specific facts showing a genuine issue for trial. *E. g., Anderson v. Viking Pump Division, Houdaille Industries,* 545

F.2d 1127, 1129 (8th Cir. 1976); *Cervantes v. Time, Inc.,* 464 F.2d 986, 993 (8th Cir. 1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973) (libel action). *See* Fed.R.Civ.P. 56. Here, the record contains no specific allegations of special damages, and we conclude that the appellants have failed to demonstrate a genuine issue of fact as to the existence of such special damages.

The district court properly found that no genuine issue of material fact exists and that the appellees are entitled to judgment as a matter of law.

Accordingly, we affirm the summary judgment.