TRUXES, Respondent v. KENCO ENTERPRISES, Inc., Appellant

(119 N.W.2d 914)

(File No. 9958. Opinion filed February 21, 1963)

Rehearing denied May 27, 1963.

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for Defendant and Appellant.

**Dana, Golden, Moore & Rasmussen,** Sioux Falls, for Plaintiff and Respondent.

ROBERTS, J. Plaintiff brought this action against Kenco Enterprises, Inc., owner and publisher of the Sioux Falls Argus Leader, a daily newspaper, to recover damages claimed to have been sustained by reason of the unauthorized publication and circulation of his photograph in the Sunday, October 23, 1960, issue of the Argus Leader. He alleged that the use of his photograph in connection with an article dealing with the "State's Elderly Citizens" violated his right of privacy and he was thereby subjected to ridicule and suffered mental distress and injury to his feelings. Trial to a jury resulted in a verdict for $3500. Defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. Motion was denied and defendant has appealed.

The photograph in controversy and the accompanying article occupied the top half of a page of defendant's newspaper. The headlines "Aging: Adversity or Fortune" and "State's Elderly Citizens Plagued By Financial Hardship" in large type appeared at the top of the page. Below the photograph of plaintiff standing in front of a case containing small compartments and sorting mail was the following caption: "GOVERNMENT SETS PACE—The federal government, unlike most industries, maintains a retirement age of 70 instead of the usual 65. 'Many men are in their prime at 65,' says a government official. Sioux Falls Postal employe Guy Truxes, 69, will retire Jan. 1 when reaching retirement age." Plaintiff was not mentioned in the text and the photograph was not necessary to the article.

Plaintiff's testimony was to the effect that he objected to having his picture taken; that he did not know for what purpose is was to be used; that he was not consulted regarding its use or compensated; that as a result of the publication he felt hurt and upset; and that for some time he did not associate with friends because they "razzed" and "kidded" him about the publication. The author of the article testified that publication of the photograph was with knowledge and consent of the plaintiff. But plaintiff is entitled to have the evidence viewed in the light most favorable to him and to have all conflicts in evidence resolved in favor of the verdict.

The first and principal question presented is whether an action may be maintained for an invasion of the right of privacy. The question is one of first impression in this state.

The right of privacy has been defined as the right of an individual to be let alone, to live a life of seclusion, to be free from unwarranted publicity. 77 C.J.S. Right of Privacy § 1; see also Davis, What Do We Mean By the "Right of Privacy", 4 South Dakota Law Rev. 1. The author of an annotation in 138 A.L.R. 22 offers the following as a definition of what constitutes an actionable violation of such a right: "The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities."

■ The defendant points out that no right of action for invasion of privacy is recognized by statute in this state or decision of this court. It is contended that the provisions of SDC 65.-0103 providing that rules of the common law not in conflict with the constitution and statutes of this state shall be in force must be construed as referring to the common law as it existed at the time of the original enactment of the provisions of this section by Chapter 105, Laws 1890, and hence the modern doctrine of privacy as a development of the common law is not adopted and declared to be the law within South Dakota. The decisions of this court hold to the contrary. The common law of this state is not so limited, but is flexible and susceptible of adaptation to the needs and demands of changing times. Moberg v. Scott, 38 S.D. 422, 161 N.W. 998, L.R.A. 1917D, 732; Holmstrom v. Wall, 64 S.D. 467, 268 N.W. 423.

■ The courts had not prior to 1890 granted relief expressly for invasion of right of privacy although a right "to be let alone" had been recognized "on the basis of defamation, or the invasion of some property right, or a breach of confidence or an implied contract". Prosser, Privacy, 48 Cal.L.Rev. 383. It was not until the publication in that year of an article by Samuel D. Warren and Louis D. Brandeis (later Justice Brandeis) in 4 Harv. Law Rev. 193 was the term the "right of privacy" introduced and defined as a legal concept. The authors after thorough discussion of the

question concluded that there is a common law right of privacy which had in some instances been protected under the guise of property rights, and that violation of the right itself is actionable. The right of privacy is generally recognized and a preponderance of authority supports the conclusion that, independently of the common rights of property, contract, reputation, and physical integrity, the right exists and an invasion of the right gives rise to a cause of action. The numerous decisions supporting these propositions are cited in the following annotations: 138 A.L.R. 22, 168 A.L.R. 446 and 14 A.L.R.2d 750.

Arguments in support of the right of privacy are summarized in 41 Am.Jur., Privacy, § 9: "One of the principal arguments advanced in support of the doctrine of privacy by its original exponents is that the increased complexity and intensity of modern civilization and the development of man's spiritual sensibilities have rendered man more sensitive to publicity and have increased his need of privacy, while the great technological improvements in the means of communication have more and more subjected the intimacies of his private life to exploitation by those who pander to commercialism and to prurient and idle curiosity. A legally enforceable right of privacy is deemed to be a proper protection against this type of encroachment upon the personality of the individual. While the early law gave redress only for physical interference with life and property, it is now recognized that man's spiritual nature also needs protection, and that his feelings as well as his limbs should be inviolate. In the formative period of the common law, before the day of newspapers, radio, and photography, when life was simpler and human relations more direct, the individual could himself adequately protect his privacy. Today this would be impossible, and to cast the individual upon his own resources in this regard would only result in a relapse into a system of private vengeance and violence which our civilization has outgrown. Freedom of speech and freedom of the press have been urged as a ground for denying the existence of the right of privacy. The right of privacy does undoubtedly infringe upon absolute freedom of speech and of the press, and it also clashes with the interest of the public in having a free dissemination of news and information. These paramount public interests must be taken into account in placing the necessary limitations

upon the right of privacy. But if this right of the individual is not without qualifications, neither is freedom of speech and of the press unlimited. The latter privilege is subject to the qualification that it shall not be so exercised as to abuse the rights of individuals. Accordingly, it is held by courts recognizing the right of privacy that the constitutional guaranties of freedom of speech and of the press do not warrant the publication of matter constituting an invasion of the right of privacy any more than they give the right to defame a person."

Restatement, Torts, § 867, recognizes the existence of the right: "A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other."

Concluding that the right of privacy has a foundation in the present day common law and is supported by the weight of authority, we hold that an action in this jurisdiction may be maintained for invasion of such right.

 A consideration of the limits of the right of privacy requires a weighing of such right "to be let alone" as against the public right to news and information. In the article by Samuel D. Warren and Louis D. Brandeis (4 Harv.L.Rev. 193, 214 et seq.), this limitation was thus recognized: "The right to privacy does not prohibit any publication of matter which is of public or general interest. * * * The design of the law must be to protect those persons with whose affairs the community has no legitimate concern from being dragged into an undesirable and undesired publicity, and to protect all persons, whatsoever their position or station, from having matters which they may properly prefer to keep private, made public against their will." In Carlisle v. Fawcett Publications, Inc., 20 Cal. Rptr. 405, 414, the court considering the right of recovery for publication of plaintiff's photograph and accompanying article said: "It is clear that as current news occurs those involved in the happening may be named and discussed in newspapers * * * even though the process actually invades the privacy of the individual. If a householder is burglarized, or a pedestrian is held up and robbed in the street, or two automobiles collide at an intersection, news media may

properly give an account of what happened even though the individual objects. The freedom of the press is constitutionally guaranteed, and the publication of daily news is an acceptable and necessary function in the life of the community." If use of a name or photograph, within bounds of propriety and decency, is in connection with disseminating of news and information of public concern, the right of privacy cannot be invoked. Moreover, the right of privacy is determined by the norm of the ordinary man; that is to say, liability exists only if the publisher of a photograph should have known that publication would be offensive to a person of ordinary sensibilities. Restatement, Torts, § 867, comments c and d. It is said in Davis v. General Finance & Thrift Corporation, 80 Ga.App. 708, 57 S.E. 2d 225,227: "There are some shocks, inconveniences and annoyancies which members of society in the nature of things must absorb without the right of redress." Whether there is an offensive invasion of privacy is "to some extent, one of law". Schuyler v. Curtis, 147 N.Y. 434, 42 N.E. 22, 31 L.R.A. 286; Cason v. Baskin, 155 Fla. 198, 20 So.2d 243. 168 A.L.R. 430; Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133; Gill v. Hearst Pub. Co., 40 Cal.2d 224, 253 P.2d 441; Pound, 28 Harv.L.Rev. 343.

██ Plaintiff concedes that the right of privacy would have accorded him no protection if defendant had used a photograph of him in connection with an article dealing for instance with the operation of the post office wherein he was employed. He asserts that defendant used the photograph of him "in a false light in an offensive publication wherein the plaintiff was portrayed as one of the state's elderly citizens plagued by financial hardship"; that plaintiff is depicted in this light by the headlines of the publication and the general tenor of the article as reflected in the first paragraph reading "South Dakota is increasingly becoming a state that shuns its aged population, forcing near poverty for many"; and that since there was no clarification in the publication to the effect that plaintiff was not one of the persons plagued by financial hardship he was by innuendo held up to contempt and ridicule which injured his feelings and reputation. Plaintiff maintains that the question of invasion of privacy was for the triers of fact and that the evidence was sufficient to justify submission of the case to the jury. The evolution of a common law

jury trial has departed from early doctrine and has developed as observed in Jerke v. Delmont State Bank, 54 S.D. 446, 223 N.W. 585, 72 A.L.R. 7, to a point requiring the determination by a jury in a civil case only of the existence or nonexistence of those facts in issue as to which the minds of reasonable men might differ in the application of mental processes to the evidence. The courts have had great difficulty in fixing proper limitations on the right of privacy. They must necessarily proceed as we have indicated cautiously in these cases involving a conflict between the rights of an individual and those of society. The courts on the one hand are urged to uphold the right of freedom of speech and of the press and the interests of the public in the free dissemination of news and information including reproduction of past news and surveys of social conditions. On the other hand the courts are urged to protect the sensibilities of the individual from brash and unwarranted publicity and against the exploiting advances of commercial interests. The case of Sidis v. F-R Publishing Corp., 2 Cir., 113 F.2d 806, 138 A.L.R. 15, is illustrative of the balancing of conflicting interests. Plaintiff who had been a child prodigy brought action against the publisher of a magazine article containing a truthful sketch of his subsequent life history. The court decided as a matter of law that he could not recover for invasion of right of privacy even though he had since childhood sought a life of obscurity and loathed public attention. The court held that his "subsequent history, containing as it did the answer to the question of whether or not he had fulfilled his early promise, was still a matter of public concern." Barber v. Time, Inc., 348 Mo. 1199, 159 S.W.2d 291, 295, states: "The determination of what is a matter of public concern is similar in principle to qualified privilege in libel. It is for the court to say first whether the occasion or incident is one of proper public interest. (As it must say whether an occasion is one to which qualified privilege extends in libel.) Warren v. Pulitzer Pub. Co., 336 Mo. 184, 78 S.W.2d 404. If the court decides that the matter is outside the scope of proper public interest and that there is substantial evidence tending to show a serious, unreasonable, unwarranted and offensive interference with another's private affairs, then the case is one to be submitted to the jury." The court in Buzinski v. Doall Company, 31 Ill. App.2d 191, 175 N.E.2d 577, considering

the extent of the authority of the court in relation to the jury in determining public interest limitations on the right of privacy, points out that summary judgment in these cases is a frequent occurrence. Clearly then, the questions of public interest limitations on the right of privacy and of whether reasonable minds can arrive by reasoning processes at more than one conclusion are for the court, and not for the jury, to decide.

�In▉ Turning again to the record before us, we think it significant that the photograph of the plaintiff was not surreptitiously snapped at his home or on private premises, but was taken in the post office after arrangements had been made for a photograph with the postmaster under whose supervision plaintiff worked. The taking of the photograph under these circumstances of a public employee while engaged in the discharge of his duties was not an infringement on his right of privacy. Barber v. Time, Inc., supra, where a published photograph showed plaintiff in a hospital bed, exemplifies a difference. The court there held that whatever may be the right of the press to take and use a picture of an individual in a public place, the right did not exist under the circumstances to take and publish a picture of an individual in a home or hospital, in connection with an article concerning an unusual ailment. It may be conceded that plaintiff in the instant case was not a public figure concerning whom the public interest became dominant over desire for privacy, yet his status was not that of a person engaged in private business or employment. It may fairly be said that the photograph in question was illustrative of the caption below it referring to the policy of the federal government retiring its employees at the age of 70 instead of the usual age of 65, and legitimately informed readers about a matter of public interest and did not embody anything of a private nature. It thus appears that the photograph was reasonably related to the point made by the author in the caption. It is not contended that the photograph depicted plaintiff in any other than a natural pose. Nor does it appear that there was anything discredible in the photograph itself. As stated earlier in this opinion, the publiction of a person's picture in connection with news or information of legitimate public interest does not constitute actionable invasion of the right of privacy unless the publisher "should have realized that it would

be offensive to persons of ordinary sensibilities." Restatement of Torts, Vol. 4, § 867, comment d. We conclude with respect to the picture and the caption beneath it that as a matter of law there was no invasion of the right of privacy. See Samuel v. Curtis Pub. Co., D.C., 122 F.Supp. 327; Berg v. Minneapolis Star & Tribune Co., D.C., 79 F.Supp. 957; Bremmer v. Journal-Tribune Publishing Co., 247 Iowa 817, 76 N.W.2d 762; Gill v. Hearst Pub. Co., 40 Cal.2d 224, 253 P.2d 441; Buzinski v. Doall Co., supra; Sarat Lahiri v. Daily Mirror, 162 Misc. 776, 295 N.Y.S. 382; Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430.

██ ██ The plaintiff ascribes to the article and accompanying photograph a meaning that he was one of the elderly citizens plagued by financial hardship. We do not consider it necessary on this appeal to determine whether the publication so construed would give rise to a cause of action. If the photograph and caption did not add anything that was offensive to a person of ordinary sensibilities, no actionable invasion of the right of privacy occurred. The printed article makes no mention of plaintiff. When a publication is not actionable per se it is the duty of the court as in an action for libel to determine whether the publication can have the meaning ascribed by an asserted innuendo and if in its natural meaning it is incapable of such interpretation, the court should withhold the case from the jury. Brodsky v. The Journal Publishing Co., 73 S.D. 343, 42 N.W.2d 855; 33 Am.Jur., Libel and Slander, § 294. The test in the instant case is what effect the publication construed in its setting and as a whole would have on the mind of the ordinary reader. The photograph was used as stated to illustrate the point made by the author in the caption beneath it that employees of the federal government enjoyed the good fortune of being able to work to a more advanced retirement age. Considering the publication herein by the effect that it would have upon the mind of the ordinary reader, we do not think it had the meaning imputed to it by plaintiff. There was no material issue of fact for the jury. The judgment is, therefore, reversed and cause remanded for further proceedings not inconsistent with this opinion.

HANSON, P. J., and RENTTO, J., concur.

BIEGELMEIER and HOMEYER, JJ., concur specially.

HOMEYER, J. (concurring specially) I agree with the opinion that the invasion of the right of privacy as a cause of action should be recognized in South Dakota, and also concur in the reversal of the judgment. The majority opinion calls attention to plaintiff's employment in the postal department and that the photograph was taken at the post office after arrangements had been made with the postmaster under whose supervision the plaintiff worked. I consider this as the determinative factor on reversal. For many years plaintiff had been a public employee, and although his duties were such as to subject him to little public attention, still the retirement of postal employees, and public employees in general, is a matter of legitimate news comment and public interest, and plaintiff should have recognized this fact as an incident of his employment. If the article and photograph had been published in the same manner of a person not in public employment, I feel that there would have been a fact issue presented for determination.

BIEGELMEIER, J. (concurring). I agree with the court's opinion as amplified by Judge HOMEYER'S concurrence.