Baxter **BERRY**, Appellee,

v.

**NATIONAL BROADCASTING COMPANY, INC.,** Appellant.

No. 72-1578.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1973.

Decided June 13, 1973.

---

Van Oosterhout, Senior Circuit Judge, filed specially concurring opinion.

Carleton G. Eldridge, Jr., New York City, for appellant.

Sam W. Masten, Canton, S. D., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, ROSS, Circuit Judge, and VAN SICKLE,* District Judge.

VAN SICKLE, District Judge.

This is a diversity action, premised on a "false light" invasion of privacy. The pertinent facts are:

On March 24, 1967, an Indian University student, Thomas White Hawk, killed a white jeweler, James Yeado, in the Yeado home in Vermillion, South Dakota. The killing was particularly brutal and, upon his plea of guilty, White Hawk was sentenced to death, which sentence was later commuted. The case received much local and national publicity.

About two years later, Baxter Berry, a white man, shot and killed an Indian, Norman Little Brave, on the Berry ranch near Belvidere, South Dakota. Baxter Berry's claim of self-defense was believed by a coroners jury, which ruled the death to be non-felonious. The widow of Norman Little Brave then signed a criminal complaint charging Baxter Berry with murder and a jury trial followed, resulting in a verdict of not guilty.

Press reports associated the two cases, as did the argument before the jury in the Baxter Berry Criminal trial. An Associated Press story stated that "accusations of a double standard of justice in South Dakota—one for whites, the other for Indians—are being heard in many parts of the state", and then went on to discuss these two cases.

* Sitting by designation.

The National Broadcasting Company broadcasts a documentary, monthly, news magazine program which they call "First Tuesday". "Documentary" and "news" in the description mean that it purports to be factual, journalistic. "Magazine" means that several topics are covered in one program. The subject matter of the programs is not "hot" news, but rather coverage in depth. As part of the broadcast for Tuesday, December 2, 1969, National Broadcasting Company ran a film entitled "Between Two Rivers", aimed at showing the cultural problems of the American Indian, caught between the two rivers of culture; White American and Indian American. The 26 minute broadcast was edited out of about 1200 minutes of film. The first 22 minutes of the film was a highly emotional presentation of the life and difficulties of Thomas White Hawk, including a report of his crime and sentence. The next segment, about 3 minutes long, was an unsympathetic report on the Baxter Berry shooting, trial and not-guilty verdict. The remaining minute was devoted to a dramatic closeout.

Although the narration of the film did not so state, the admitted purpose of the introduction of the Baxter Berry case into the broadcast was to suggest that "some people felt that there was a double standard of justice in South Dakota." [1]

[The full text of the audio is shown at Appendix p. 468a, and nowhere does the phrase "double standard of justice in South Dakota" appear.] The thought was presented entirely by innuendo, and reasonable people could have, and did, interpret the meaning to be that Baxter Berry was a wrongful beneficiary of

that double standard. This was the presentation which cast the plaintiff in a false light.

Baxter Berry claimed he was subjected to abuse and annoyance because of the publication, aggravating a heart condition, and he brought this action. The trial resulted in a jury verdict of $25,000.00 in Baxter Berry's favor.

Defendant made the proper motions during the trial, and moved for judgment n.o.v. at the close of the trial. That motion was denied and in this appeal National Broadcasting Company challenges the correctness of that denial. The position of National Broadcasting Company is that in this action the plaintiff must prove that the false material was published with malice, or its equivalent, reckless disregard of its truthfulness, and that the plaintiff has failed to offer evidence sufficient to sustain a verdict.

The concept of the tort of invasion of privacy is best discussed in Restatement 2d, Torts, § 652A through 652J [Tentative Draft 13, 1967]. The existence of a right of privacy is recognized in about 35 states, and is rejected by 4 states. [Restatement 2d, Torts, § 652A et seq.] South Dakota recognizes the right [Truxes v. Kenco Enterprises, Inc., 80 S.D. 104, 119 N.W.2d 914 (S.Dak. 1963)].

The right of privacy is invaded when there is:

a) An unreasonable intrusion of one's seclusion, or,

b) An appropriation of the other's name or likeness, or,

c) Unreasonable publicity given to one's private life, or

---

1. Testimony of Eliot Frankel, Executive Producer, National Broadcasting Company.

    Q. Well, could you explain to me, then, the significance of using Mr. Berry in this program, what you were illustrating there?

    A. Well, from the standpoint of the Indians—I believe I just saw it here—just that the Indians felt that there was perhaps a double standard. We pointed

out that one month—just one month—the case of White Hawk was closed October 24th. And there was the feeling of many Indians at that time that there was a—

    Q. Double Standard?

    A. Double standard.

    Q. Of justice, is that right?

    A. So, that was the point. [Appendix p. 48a]

d) "Publicity which unreasonably places the other in a false light before the public . . . ".

[Restatement 2d, Torts, § 652A, supra.]

This case is concerned only with the false light invasion, item (d) above. In these cases, the plaintiff may have an action which can be laid in libel and slander or in invasion of privacy. The Restatement text writers point out that "false light" invasion of privacy is a distinct form of tort which is dependent upon falsity, and so is closely allied to defamation. The problem is whether the plaintiff can, by suing for invasion of privacy, by-pass the various safeguards and limitations which have grown up around the accusation of defamation. The Restatement 2d answer to this problem is:

"It appears quite unreasonable that limitations on recovery for defamation can be evaded by suing on another theory for the the same publication of the same defamatory matter."

And, he may lay his action in two theories, but will be limited to only one recovery. [Restatement 2d, Torts, § 652A, supra.]

The United States Supreme Court has consistently held that the First Amendment protection of the freedom of the press requires that "false light" cases be subject to the same restraints as defamation cases. [See New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963)].

The theory of the Restatement, and of the more recent cases, is that the right of privacy, the right to be left alone, is limited by a privilege to give publicity to matters of public concern and interest. [Restatement 2d Torts, § 652F, Supra.] The Rule as given in the Restatement 2d and as enunciated in Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L. Ed.2d 456 (1966) is:

The media may, without liability, give publicity, even falsely, to facts concerning another which place him in a false light to the world to his injury if the facts concern an event of general public interest, unless the falsities are published with knowledge of their falsity or in reckless disregard of whether they are true or not, i.e., with malice.

■ The doctrine of the vulnerability of the public to negligent news media was enunciated in N. Y. Times v. Sullivan, supra. There the Court held that a person who had run for election to public office had voluntarily exposed himself to the media to the point where he had to prove malice to recover for defamation. In Time, Inc. v. Hill, supra, the Supreme Court extended the doctrine of *Sullivan* to encompass the circumstances where a person is inadvertently caught up in a matter of public interest. [See also Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971); where the criteria for the application of the privilege shifts from "persons in public eye" to "matters of public interest".] On its facts, the Baxter Berry case falls somewhere between *Sullivan* and *Hill*. It is clear that as to the issue of privacy, Mr. Berry's act of shooting Norman Little Brave removed Mr. Berry's right to privacy as to that incident and matters relevant to it. Clearly, killing another person is a matter of public interest, and caused Mr. Berry to become a public figure. Therefore, before Baxter Berry can recover in this action, he must prove that he was cast in a false light out of "malice".

The plaintiff has not pleaded malice, but the instructions of the Court to the jury were very specific on the need to find malice if there was to be a verdict for the plaintiff.[2] In light of the ver-

2. Erroneous statements or inaccurate portrayals of a matter of public interest may render a newspaper or broadcasting company liable to a private individual even where such private individual is involved in an event of public or general interest, such as a defendant in a murder trial, but only if such news media broadcast a

dict, we must assume that the jury did find as a fact that the defendant did publish the falsity with malice, or its equivalent, reckless disregard of the truth.

■ Ordinarily, we would resolve the question by examining the evidence in a light most favorable to the party having the verdict and overturn it only if the verdict were clearly erroneous. In First Amendment cases however, this Court must make an independent judgment as to whether the facts will support a verdict for the plaintiff without abridging the rights of freedom of speech and press as guaranteed by the First and Fourteenth Amendments. [New York Times v. Sullivan, supra; Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296.]

We turn then to the evidence claimed to show falsehoods published in the broadcast. Plaintiff furnished proof of errors of commission and errors of omission.

The claimed errors of omission were:

1. National Broadcasting Company failed to state that there had been a psychiatric examination of Thomas White Hawk prior to his pleading guilty which found him competent, while they did state that a later examination concluded that he had been incompetent at that time.

2. National Broadcasting Company did not mention the fact that another jury had dismissed a murder charge against an Indian youth charged with being an accomplice of Thomas White Hawk in the murder of James Yeado.

3. National Broadcasting Company failed to mention that the same jury which dismissed the murder charge against Baxter Berry had also dismissed a murder charge against an Indian defendant.

4. National Broadcasting Company failed to mention that Norman Little Brave had a history of violent assault, evidenced by the fact that the Little Brave family had brought the family weapons to Baxter Berry for safekeeping at other times when Norman had threatened violence.

5. National Broadcasting Company omitted an interview with Norman Little Brave's father after the Baxter Berry trial in which the father signified satisfaction with the trial; while they did an interview with his stepmother which gave the opposite reaction.

The claimed errors of commission were:

1. National Broadcasting Company said that Thomas White Hawk's lawyer had only been out of law

---

false portrayal of such event, and in this case, that NBC knew that such report or portrayal was false or broadcast the same with a reckless disregard of whether such portrayal was false or not, meaning that NBC entertained serious doubts as to the truth of its reports.

Counsel for the defendant NBC have introduced evidence in this trial that their documentary Between Two Rivers was a fair and factual presentation of Indian problems in South Dakota, and that their brief reference to the plaintiff, Baxter Berry, was not false, and that any reference to the plaintiff, Baxter Berry, was without actual malice.

Now, the term "actual malice" does not connote personal spite or ill will toward any particular individual. A publication or broadcast is made with actual malice,

as that term is used in these instructions, if it is made with knowledge that it is false, or with reckless disregard of whether it is false or not.

In other words, you are instructed that newsworthy publications or broadcasts may not be the subject of a damage suit based on the right of privacy unless they contain "knowing" or "reckless" falsehood. [Appendix pp. 459a, 460a]

The burden on the plaintiff as against the defendant, NBC, is stricter with regard to the fifth element. The plaintiff has the burden of establishing by clear and convincing evidence that the broadcast was made with knowledge that it was false or with reckless disregard of whether it was false or not. [Appendix p. 465a]

school six months at the time he represented White Hawk, whereas he had been out of school for over two years.

2. In the showing of an interview right after the Baxter Berry trial, National Broadcasting Company identified Norman Little Brave's stepmother erroneously, calling her his mother.

National Broadcasting Company took an apparently true statement:

"That some people thought there was a double standard of justice in South Dakota",

and used it so as to allow the inference that Baxter Berry was a guilty man found innocent by virtue of the fact that he was a white man in a predominantly white society. National Broadcasting Company did not show all of the evidence supporting Baxter Berry's innocence, but it had no obligation to do so. Its failure to show that evidence does not alter the fact it reported truthfully that there were people who felt that a double standard existed. The connection of this double standard by innuendo with the Baxter Berry case, reasonably allowed the inference that Baxter Berry was the wrongful beneficiary of that double standard. If this allowable inference were tantamount to a falsehood, it would have been the only relevant falsehood. The others are only evidence of poor craftsmanship, or excessive zeal for news matter which supported the editor's thesis.

 Proof of the factual inaccuracies and omissions committed by National Broadcasting Company was addressed to proving a reckless disregard for the truth by the showing of numerous untruths, as was done in Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). However, we hold that the proof that persons did infer that Baxter Berry was the wrongful beneficiary of a double standard, and the proof of irrelevant inaccuracies, together fall short of establishing the "malice" needed to sustain a verdict

against a broadcaster in light of the dictates of the First Amendment.

Reversed and remanded with a direction that a judgment of dismissal be entered.

VAN OOSTERHOUT, Senior Circuit Judge (specially concurring).

I agree that malice has not been established and hence a reversal is required. I concur with Judge Van Sickle's well-considered opinion except that I am unable to agree that there is any substantial evidence to support a finding that defendant in its broadcast made any relevant false statement. The resolution of the issue on which we differ has no bearing on the result of the case.