**DROTZMANNS, INCORPORATED,**
Appellee,

v.

**McGRAW–HILL, INCORPORATED,**
Appellant.

No. 73–1638.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 17, 1974.

Decided Aug. 8, 1974.

Lyle J. Wirt, Sioux Falls, S. D., for appellant.

James E. Doyle, Yankton, S. D., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

MATTHES, Senior Circuit Judge.

This is a libel action brought by Drotzmanns, Incorporated, a South Dakota trucking company (hereinafter sometimes referred to as plaintiff), to recover general and punitive damages against McGraw-Hill, Incorporated (hereinafter referred to as defendant or McGraw-Hill), publisher of a trucking industry magazine entitled *Fleet Owner*. Jurisdiction is based upon diversity of citizenship and the amount in controversy. The jury found for plaintiff and awarded it $245,000 in "general damages." The district court denied motions by defendant for a directed verdict and for judgment n. o. v. or alternatively a new trial. Defendant has appealed from the judgment entered on the verdict.

The litigation arises from an article entitled "Livestock Country: Fleet Auction Notices Flap in the Breeze," published in the April 1972 issue of *Fleet Owner*, which has a circulation of approximately 73,000 and is distributed nationwide, primarily to various trucking companies and those involved with the trucking industry. The six-page pictorial and written article, authored by Senior Editor Bernard Swart, exhaustively recounted that many livestock haulers were being forced out of business by low freight rates unregulated by the Interstate Commerce Commission. The lead illustration for the article depicted an auction notice, posted on the side of a building, announcing the public sale on January 28, 1971, of trucking equipment owned by "Drotzmann's, Inc. —Yankton, South Dakota."

Immediately beneath the illustration, the article was prefaced with the following two paragraphs:

Hundreds of livestock haulers are being forced out of business because of declining cutthroat rates and destructive conditions in their non-regulated portion of the trucking industry.

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

It's the depression and dustbowl days all over again for many livestock truckers as notices of public auction of vehicles and assets of bankrupt, longtime fleets flap from fenceposts and clog the mails in cattle country.

■ Plaintiff's name was conspicuous by its absence from the article except in the reproduction of the sale bill; neither did the article explicitly state that plaintiff was bankrupt. However, plaintiff premised its right to recover on the theory that the reasonable implication derived from the lead illustration and the first two paragraphs was that the plaintiff's auction notice was typical of those being posted by bankrupt midwestern livestock hauling companies. More specifically, plaintiff claimed the article in pertinent part implicitly stated that it had been forced out of business and was bankrupt.[1]

Plaintiff, however, was not bankrupt, although the firm had shown losses or only minimal profits and had experienced financial problems in the several years previous to 1972. Moreover, the auction of the plaintiff's equipment, about one third of the company's fleet, ostensibly was intended solely to liquidate the interest of the one of the three brothers owning the firm who had been killed in August, 1970, and the auction notice itself so stated.[2]

Several months after the article appeared in *Fleet Owner,* plaintiff filed this libel suit against defendant. The parties and the court entertained the view that New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny, discussed *infra,* were applicable. Thus the major premise was that defendant enjoyed a constitutional privilege against liability unless it could be proven that defendant acted with actual malice, as that term is defined in New York Times v. Sullivan, *supra,* and subsequent cases, in publishing the assertedly libelous implication that Drotzmanns was bankrupt.

Plaintiff contended that the evidence demonstrated malice on the part of defendant. McGraw-Hill sought to defeat recovery by claiming that the article, viewed in context, was substantially true and that in any event the evidence wholly failed to establish that in the publication of the article defendant acted with malice. The issue of malice *vel non* was submitted to the jury and resolved against defendant.

Defendant advocates here as it did in the trial court that the evidence was insufficient to justify a finding by the jury that the libelous illustration and article had been published with malice. The defendant additionally submits that proof of actual damages was required and that the evidence conclusively showed that the plaintiff did not sustain any damages. In any event, the defendant urges that the sum awarded, $245,000, was grossly excessive.

Although this appeal was submitted in January of this year, we deferred further action pending the Supreme Court disposition of a case raising several issues similar to those in the present litigation, Gertz v. Robert Welch, Inc., 471 F.2d 801 (7th Cir. 1972), cert. granted, 410 U.S. 925, 93 S.Ct. 1355, 35 L.Ed.2d 585 (1973). The opinion recently filed in that case by the Supreme Court modifies and substantially clarifies the right of a private individual not previously in the public eye to sue for libel. Gertz v. Robert Welch, Inc., —— U.S. ——, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974).

1. It seems apparent that under South Dakota law a cause of action for libel may be based upon the reasonable inferences to be drawn from the interrelationship between the text of an article and an accompanying illustration. *Cf.* S.D.Comp.Laws § 20–11–3 (1967); Truxes v. Kenco Enterprises, Inc., 80 S.D. 104, 119 N.W.2d 914 (1963) (suit for invasion of right of privacy). *See also* Time, Inc. v. Ragano, 427 F.2d 219 (5th Cir. 1970); Wasserman v. Time, Inc., 138 U.S. App.D.C. 7, 424 F.2d 920, cert. denied, 398 U.S.. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970).

2. This stated reason, however, was illegible on the poster as reproduced in the illustration for the magazine article.

Before discussing *Gertz* further, it is appropriate to recognize that in New York Times v. Sullivan, *supra*, the Supreme Court held that the first amendment precluded recovery by an elected public official for a libelous statement against him unless there was proof of "actual malice" on the part of the libeler —evidence that the libeler knew that his statement was false or that he acted with reckless disregard of whether it was false or not. 376 U.S. at 279–283, 84 S.Ct. 710. The actual malice standard subsequently was extended to suits involving libel against public figures other than elected officials. *See, e. g.,* Curtis Pub. Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); Walker v. Pulitzer Pub. Co., 394 F.2d 800 (8th Cir. 1968); Pauling v. Globe-Democrat Pub. Co., 362 F.2d 188 (8th Cir. 1966), cert. denied, 388 U.S. 909, 87 S.Ct. 2097, 18 L.Ed.2d 1347 (1967). Finally, a plurality opinion in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S. Ct. 1811, 29 L.Ed.2d 296 (1971), seemed to realign the focus of the *New York Times* standard by suggesting that the constitutional privilege was applicable as a defense against liability for libel in any discussion of a matter of public or general significance, without regard to whether the libeled party was a public official or public figure. *See* Cervantes v. Time, Inc., 464 F.2d 986, 990 (8th Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973). *See generally* Comment, 70 Mich.L.Rev. 1547 (1972).

In Gertz v. Robert Welch, Inc., *supra,* however, the Supreme Court reaffirmed a principle clearly inherent in the opinions of the Court before *Rosenbloom* on the libel privilege and held the broad constitutional privilege was inapplicable if the victim of the libel was a private individual.

Mr. Justice Powell, writing for the Court in *Gertz,* ruled that the need to encourage uninhibited discussion of public issues by granting a privilege against liability for libel did not outweigh in every instance the legitimate state interest in allowing libel suits to compensate persons for harm inflicted upon them by defamatory falsehoods. After outlining what he considered to be fundamental differences between those defamation plaintiffs who are public figures and those who are private citizens, Mr. Justice Powell concluded that, "the States should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual." —— U.S. at ——, 94 S.Ct. at 3010. Consequently, the Court held that when the substance of the defamatory statement makes substantial danger to the reputation apparent, "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." —— U.S. ——, 94 S.Ct. at 3010. After finding that the plaintiff was indeed a private individual and therefore not required to prove actual malice under the *New York Times* test, the Court remanded for a new trial in light of the standards set down in its opinion.

After the filing of the Supreme Court opinion in *Gertz,* we directed the parties to file supplemental briefs directed to the holding of the *Gertz* case, and they have complied. Both parties acknowledge that *Gertz* should be applied in deciding this appeal. Having so agreed, they part company.

Drotzmanns, Inc., in seeking affirmance, claims that the degree of culpability required to be proven in the trial of this case in order to destroy the constitutional privilege of the defendant, i. e., actual malice, is much greater than that required by the *Gertz* standard, that is, negligence on the part of the libeler. Hence, the plaintiff argues, the defendant should be precluded from seeking retrial on a negligence standard when a jury has already rendered a verdict necessarily finding defendant accountable for at least recklessness in publishing

the defamatory material. Plaintiff further contends that the award of $245,000 is supported by substantial evidence.

McGraw-Hill again asserts that it is entitled to an outright reversal with directions to dismiss the action because plaintiff assertedly "did not sustain any damages as a result of McGraw-Hill's publication," and because under South Dakota law the defense of qualified privilege is available to defendant and an absolute bar to plaintiff's action.

Neither the original nor the supplemental briefs persuade us to affirm or reverse outright. For the reasons stated below, we reverse and remand for another trial.

■ The fatal weakness of the plaintiff's first argument in its supplemental brief, that the jury finding of malice precludes defendant from seeking retrial under the negligence standard of *Gertz*, is its assumption that the finding of malice, implicit in the jury's verdict, is predicated upon sufficient evidence. Based upon a careful analysis of the record, we hold that the issue of malice should not have been submitted to the jury. Accordingly, the verdict and judgment cannot stand.

Plaintiff apparently concedes that there is no reliable evidence that defendant used the Drotzmanns auction notice as an example of those posted by bankrupt or financially distressed trucking firms with actual knowledge that Drotzmanns was not bankrupt. Indeed, the evidence indicates that defendant's employees were unaware of the financial condition of the plaintiff. But the plaintiff urges that actual malice has been established under the second part of the *New York Times* test, reckless disregard for the truth or falsity of the defamatory statement.

We disagree. A review of the evidence concerning the use of the plaintiff's sale poster by the defendant's staff reveals no indication of a "reckless disregard" for the truth, as that term has been defined by the Supreme Court.

In St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), the Supreme Court construed the phrase in light of precedent:

These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*See also* Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).

We forego a detailed resume of the circumstances surrounding the use of the Drotzmann auction poster by McGraw-Hill. It is sufficient to observe that prior to the preparation of the article, the author, Bernard Swart, was furnished background information by a reliable source. Moreover, a copy of the Drotzmanns sales bill was selected fortuitously to serve as the lead illustration for the article from a batch of similar auction posters, all represented by the reliable source as indicating the financial distress of the livestock hauling industry. Finally, the record discloses that neither Swart nor any other employee of McGraw-Hill entertained any suspicion that plaintiff would be libeled by the article or that the use of the Drotzmanns poster might convey a false impression of the trucking company's financial condition. Thus we conclude that there was no showing of a "reckless disregard" for the truth.

■ Perhaps the defendant's employees should have investigated the financial status of the plaintiff before using its auction poster as illustrative of those issued by bankrupt trucking firms, a matter we do not consider. But failure to investigate does not in itself establish malice. New York Times v. Sullivan, *supra*; St. Amant v. Thompson, *supra*; New York Times v. Conner, 365

F.2d 567 (5th Cir. 1966); Hurley v. Northwest Publications, Inc., 273 F. Supp. 967, 975 (D.Minn.1967), aff'd, 398 F.2d 346 (8th Cir. 1968).

█ Although there is no basis in fact to support a verdict on the actual malice theory, the interests of justice dictate that plaintiff should be afforded an opportunity to establish liability of defendant under the standard enunciated in the *Gertz* case. Consequently, a remand for another trial on the issue of liability is in order.

█ Secondly, we consider the wide disagreement between the parties on the issue of damages. As stated, the plaintiff argues that the jury award of $245,000 is fully supported by the record; defendant insists that the evidence shows that the plaintiff suffered no injury whatever from the publication of the article, and that since plaintiff is not entitled to any damages, we should reverse outright. In any event, defendant submits that the sum awarded was grossly excessive.

While we do not agree that the evidence would not support a conclusion that plaintiff suffered at least some injury from the article, we do concur that the verdict of $245,000 is so grossly excessive as to shock the conscience of this court. *See* Century "21" Shows v. Owens, 400 F.2d 603 (8th Cir. 1968); Bankers Life & Cas. Co. v. Kirtley, 307 F.2d 418 (8th Cir. 1962). Indeed, the district court entertained serious doubts about the amount of the verdict.[3]

The undisputed evidence shows that the company had experienced financial difficulties previous to the publication of the article. Plaintiff introduced into evidence monthly financial statements for only the first six months of 1972, but these statements show that the freight revenue of $138,257 in the first quarter of 1972, before the article was published, was already $36,000 less than the revenue for the same quarter in 1971. Moreover, of the $60,000 loss suffered in 1972, about $34,000 of that amount was attributable to an unsuccessful auction of equipment in September 1972. The one Drotzmann brother who testified at trial admitted he knew of no one who had ceased doing business with Drotzmanns due to the article, although reportedly one bank loan was refused after the issue of *Fleet Owner* appeared. Although this witness asserted that the article adversely affected the trucking company's business, he admitted that not all of the loss suffered by Drotzmanns was due to the alleged libel. There was no evidence more specifically indicating how the trucking corporation was adversely affected by the magazine publication, and no evidence whatever concerning the plaintiff's financial condition after December 1972.

But aside from the lack of evidence on the issue of damages, we would feel compelled by *Gertz* to remand the issue of damages for retrial. The opinion of Mr. Justice Powell in *Gertz* indicates that the court should consider the manner in which damages are awarded in libel suits as an integral aspect in balancing the interests of the states in allowing recovery for libel with the need to permit an uninhibited exercise of the first amendment right to free speech. —— U.S. —— ——, 94 S.Ct. 2997.

█ In *Gertz*, the Court held that the interest of the states in affording relief

---

3. During the discussion of the defendant's motion for judgment n.o.v., the district judge observed:

I will concede, on the basis of the old test as to whether or not the verdict is excessive, that when the Judge opens the verdict or looks at it, reads it, and is sufficiently startled that he falls off his chair, then it's excessive.

Now, I'm going to say right now that I very nearly did fall off my chair when I opened the verdict up, so I very nearly met that test.

Nevertheless, let me say this: If I were called upon to remit down, reduce the damages, what figure would I reduce them to:

Therefore, it just seems to me that I'm going to let my brothers down on the Eighth Circuit—and I don't know which panel I'm going to draw—I'm just going to let them decide.

Appendix at 107.

for libel extends only to compensation for actual injury. Consequently, there cannot be recovery for presumed or punitive damages, unless there is sufficient evidence of actual malice, evidence which we have found lacking on this record. In the trial of this suit, however, the jury was instructed both that damages could be presumed if the defamation was libel per se and that punitive damages could be awarded. It is a fruitless enterprise to speculate to what degree, if any, the jury verdict of $245,000 was influenced by these instructions. Instead, the matter of damages should also be remanded to the district court for proceedings consistent with the principles enunciated in Gertz v. Robert Welch, Inc.

This brings us to the final question—urged here for the first time in the supplemental briefs—whether McGraw-Hill in publishing the article was exercising a conditional or qualified privilege under the South Dakota statute.[4]

This defense was presented to the district judge in the motions for directed verdict and for judgment n. o. v. After careful and responsible consideration of this issue the court ruled the article did not fall within the rule of qualified privilege.

 A review of South Dakota law would only serve to further prolong this extended opinion. We have examined the authorities and are satisfied that the district judge's evaluation of the law and his application of it to the facts should not be upset. Although as a reviewing court we are not bound irrevocably to the decision of the district judge in a diversity case involving local law, nevertheless, when, as here, the district judge is conversant with the local law, we give special weight to his determination. *See* Highway Const. Co. v. Moses, 483 F.2d 812, 814 n. 2 (8th Cir. 1973);

Luke v. American Family Mutual Ins. Co., 476 F.2d 1015, 1019 n. 6 (8th Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973). We therefore hold that on this record defendant is not isolated from liability by the qualified privilege doctrine. *See generally* 50 Am.Jur.2d *Libel & Slander* § 195; W. Prosser, Handbook of the Law of Torts § 115 (4th ed. 1971).

For the reasons stated, the judgment is vacated and the cause is remanded for another trial on all issues.

---

4. S.D.Comp.Laws § 20–11–5 (1967):

A privileged communication is one made:

\* \* \* \* \*

(3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information \* \* \*.